### SCONYERS v. THE STATE.

There being evidence to sustain the verdict, the discretion of the judge in refusing to grant a new trial will not be controlled.

(a) Newly discovered testimony for the purpose of impeaching a witness, and which could have been procured before the trial by the exercise of proper diligence, is not cause for a new trial.

July 7, 1890.

Assault with intent to rape. Criminal law. Evidence. Before Judge HINES. Emanuel superior court. October term, 1889.

Sconyers was convicted of assault with intent to commit rape, and moved for a new trial on the grounds that the verdict was contrary to law and evidence, and for newly discovered evidence. He introduced no evi-

dence at the trial. The evidence for the State consisted of the testimony of one Norris and his mother-in-law, Mrs. Jones; Mrs. Norris, his wife, who could have testified, being sick in bed. The testimony showed that, about nine o'clock at night on June 1, 1889, Sconyers and Kemp went to the house of Norris, disguised with something like sacks pulled over their heads with eyes and mouth painted on them. Norris had gone out to feed his horse. As he was going back to the house, one of the disguised men shot at him. He reached the house and started to the back room to get his gun, when one of them, Kemp, pointed a pistol at him and told him to stop, and came straight to him; while Sconyers went in, carrying a stick, and told Mrs. Jones she must go with him. He took her and Mrs. Norris by the hands and led them out. Kemp made Norris go about twenty steps from the gate and told him to stand there until he came back; turned him around and told him not to look that way. They went off a little further and told him to go into the house and stay there; that there were spies around there, and if he came out he would be shot. He saw only one pistol; was intimidated by their presenting it at him. They carried the women a little further down the path, stopped and stood there a little while, and told Norris if he moved he would be shot to death. He heard his wife say he had not done anything to be treated this way; he was about twenty steps from them, and they were fifty or sixty-nine steps from the house; he could not hear what Sconyers said, but could hear his wife and Mrs. Jones. Kemp came back and told him to go into the house and stay there. Norris still begged him, but he told him if he did not want to be shot to death he had better go into the house and stay there. He turned round, asked Kemp not to hurt his wife for she was sick, and went into the house; heard nothing more until they returned.

v. 85-43

They were gone about two hours. When about one hundred yards from the house, one of the men pulled out a sack and put it over Mrs. Jones' head. They carried the women down the path, turned their backs to each other and told them to stand there until they· could speak to Father Wiggins. When they left, Mrs. Jones told Mrs. Norris that she knew who it was, it was Sconyers and Kemp. Sconyers had Mrs. Jones when he went off, and Kemp had Mrs. Norris. Sconyers said Father Wiggins was a cruel old man. He carried Mrs. Jones off into the woods and told her to sit down. She did so, and he sat down by her, and told her that the only way to save herself from a whipping was to let him do what he wanted. She told him he might beat her to death or do anything he wanted but that. He put his hands on her breasts and legs, and she shoved them off. He said Father Wiggins was a hard old man, and got up and went and cut him four switches. He did not attempt to use them, and did nothing more to her but sit down by her. He wanted to have intercourse. He only put his hand on her twice before getting the switches. He sat talking to her, but she did not let him do anything. She had known him about two years; never had anything to do with him in her life. He lived five or six miles away. When the four returned from the woods, between eleven and twelve o'clock, Mrs. Norris was with Kemp and Mrs. Jones with Sconyers. Norris heard them talking and heard his wife call him. They sat on a log. The women did not have hold of the men's arms; Mrs.· Norris's arm might have been touching Kemp's. She said they wanted some wine. Kemp said he wanted some wine, and asked Norris if he had any ; and Norris replied yes. Kemp told him to go and get them some. He went and got a light, returned and asked them how much they wanted. After some discussion between

Kemp and Sconyers (whom he called "friend") touch-
ing the desired quantity, Sconyers told Norris to bring
them half a gallon, which he went and drew. They told
his wife to come and get it, and told him to put down
that light and come no closer with it. He went to them
and walked up. When his wife handed them the wine,
they pushed away their disguises to drink, and he
recognized them. He got a square look at Sconyers'
face; the light was about five steps away and shone on
it. He took a good drink, turned away and fixed his
disguise. They asked Norris if he wanted to see the
others that were around there; he replied yes, but they
never called any one. They went and got their
horses and left. Norris saw no more of them until
some time afterwards. The next morning, he and the
women found the place in the woods to which the lat-
ter had been taken, and found the switches. It was
nearly seven hundred yards from the house; and the
women identified the places where they sat as being
thirty-three steps apart. Norris also observed the
horses' tracks, and noticed that those made by the left
forefoot of one of them appeared as if it had a notch
in the hoof; and subsequently saw Sconyers riding a
horse that made tracks with his left forefoot just like
those he had noticed.

The defendant stated that he saw Mrs. Jones on the
first of June and made arrangements with her to come
there that night with Kemp, and went according to the
understanding; that she told him that Norris had been
threatened by the Kuklux, and for him and Kemp to
fix up and frighten him away; that she had that sack,
and when they had got off a piece, pulled it out and
told him to put it over her head for Norris, also to
bring the switches so that she could tell Norris defend-
ant tried to whip her; and that it was all arranged and
everything went well, and he was not guilty of that

charge. Norris and Mrs. Jones gave testimony which entirely rebutted this statement, unless both of them swore falsely.

Following is the newly discovered testimony: Shearhouse and Douglass made affidavits that they were acquainted with Mrs. Jones; that her general reputation for chastity and virtue among her neighbors in Chatham county was bad; and that from the reputation she bore, she was nothing but a common prostitute, is unworthy of belief, and deponents would not believe her on oath. Both these affidavits were made in Chatham county. In Emanuel county, where the conviction occurred, G. M. Kemp made an affidavit that he saw the affidavits of Shearhouse and Douglass signed, and from the reputation Mrs. Jones bears in the community she lived in, she is nothing more nor less than a common prostitute. In the same county, John J. Jones made an affidavit that he was in conversation with defendant's attorney, who seemed very anxious to discover facts pertaining to the character of Mrs. Jones; that before the trial he would not tell anything, but as soon as he saw what he believed to be an innocent man convicted, he immediately gave information which led to the discovery of the facts contained in the affidavits of Shearhouse and Douglass; that none of this information was given or would be given till after the trial; that the reputation of Douglass and Shearhouse is good; and that he saw said affidavits signed. Defendant's affidavit was, that he used all diligence to find out the character of Mrs. Jones, was not aware of the newly discovered evidence used in his motion for a new trial, and that the affidavits of Douglass, Shearhouse and John J. Jones were not known to him until after the trial, and had the same been known he would have insisted on such evidence at his trial. His attorney made affidavit of ignorance of the newly discovered

evidence until after the trial.   Two persons made an
affidavit that if proper proof had been submitted that
Mrs. Jones was a common prostitute, they would have
returned a verdict of not guilty instead of guilty, as
her character was not proved.   Seven others deposed
that they were jurors in this case and rendered a ver-
dict of guilty; that they have read the affidavit hereto
attached, and had such evidence been before them, they
would have returned a verdict of not guilty, as the
verdict was rendered because there was no proof before
them of the bad character of Mrs. Jones.

The judge overruled the motion for a new trial, and
the defendant excepted.

F. H. SAFFOLD and WILLIAMS & BRANNEN, for plaintiff
in error.

O. H. ROGERS, solicitor-general, by T. H. POTTER, for
the State.

SIMMONS, Justice.

Sconyers was convicted of the crime of assault with
intent to rape.   He made a motion for a new trial upon
the ground that the verdict was contrary to evidence,
and upon the ground of newly discovered evidence.
The motion was refused by the court, and he excepted.
The jury having found the defendant guilty, and the
judge who tried the case being satisfied with their find-
ing, and there being some evidence to sustain the ver-
dict, we will not interfere with the discretion of the trial
judge in refusing to grant a new trial upon the ground
that the verdict was contrary to the evidence.   The newly
discovered evidence seems to be for the purpose of
impeaching a witness, Mrs. Jones, on whom the assault
is alleged to have been made.   Courts will not grant a
new trial on the ground of newly discovered testimony
which is to be used on the next trial for the purpose of
impeaching a witness.   According to defendant's state-

ment, he knew that Mrs. Jones was a prostitute, because he stated to the jury that she made this assignation with him. It seems to us that if he knew she was a common prostitute (as this newly discovered testimony makes her), he could, by the exercise of proper diligence, have found witnesses who would have testified to it. It seems it was little trouble for him to find them after his conviction.                    *Judgment affirmed.*